UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JULIO PEREZ,

              Plaintiff,

      v.                                                                      12-CV-740-LJV-LGF
                                                                                DECISION & ORDER

JONATHAN KRUGER, *et al.*,[1]

              Defendants.

_____


On August 6, 2012, the plaintiff, Julio Perez, commenced this action under 42

U.S.C. § 1983, alleging claims of excessive force, malicious prosecution, and deliberate

indifference to his medical needs.[2]  Docket Item 1.  After extensive discovery and

motion practice, on October 28, 2020, the defendants, Jonathan Kruger, William

Gregoire, Denise Bell, Thomas Smith, and David Pokigo, moved for summary judgment

on Perez's claim for malicious prosecution.  Docket Item 179.  On December 24, 2020,

Perez responded,[3] Docket Item 194, and on January 6, 2021, the defendants replied,

Docket Item 195.

---

[1] The Clerk of the Court shall correct the electronic docket to include the defendants' correct and full names: Jonathan Kruger, William Gregoire, Denise Bell, Thomas Smith, and David Pokigo.

[2] This Court previously granted the defendants' motion for summary judgment on Perez's claim for deliberate indifference to his medical needs.  Docket Item 76.

[3] Although Perez is represented by court-appointed counsel, he is pressing this claim himself.  *See* Docket Item 194.  Perez's opposition to the motion for summary judgment does not clearly state any sworn facts but instead reiterates previous requests for relief, including the appointment of counsel.  To the extent Perez asks for the appointment of counsel, that request is denied as moot.  *See* Docket Item 84 (appointing Perez counsel).

For the following reasons, the defendants' motion for summary judgment on the malicious prosecution claim is granted.

## FACTUAL BACKGROUND

Perez is a prisoner currently confined at the Fishkill Correctional Facility; he is serving a twenty-five-year sentence that began in December 2000.  Docket Item 179-1 at 1; Docket Item 179-11 at 1-2.  Perez's claims arise out of an incident that occurred on January 26, 2012, when he was confined at the Wende Correctional Facility ("Wende").  *See* Docket Item 1 at 6.  The parties offer differing accounts of what happened that day.

According to the defendants, "at approximately 6:35 p.m. [on January 26,] Smith and Pokigo were escorting [Perez] off of 5 Company, A Block[,] to be interviewed by [] Gregoire about an earlier incident involving [] Bell, when, without provocation, [Perez] suddenly turned and struck Smith on the left side of his face with a closed fist."  Docket Item 179-1 at 2.  In response, "Smith and Pokigo each grabbed one of [Perez's] arms and took him to the ground, and Gregoire responded and applied mechanical restraints."  *Id.*

Perez, on the other hand, alleges that Bell called Perez out of his cell, and once Perez was in the lobby, the defendants and other correction officers attacked Perez, "knock[ing Perez] to the floor while kicking [] and punching [him]."  Docket Item 1 at 6.  According to Perez, the defendants assaulted him in retaliation for a grievance he previously filed against another correction officer.  *Id.*

As a result of this incident, staff at Wende prepared a use of force ("UOF") form as well as an unusual incident report ("UIR").  *See* Docket Items 179-7, 179-8.  The use

2

of force initially was reported by Gregoire, and both reports included the defendants'

version of events.  *See* Docket Item 179-7 at 7; Docket Item 179-8 at 1.

In February 2012, then-Corrections Captain Stephen Casaceli reviewed the UOF

and UIR in his role as criminal prosecution liaison.  Docket Item 197-13 at 1.  As

criminal prosecution liaison, if Casaceli believed that a prisoner might be prosecuted for

conduct underlying a UOF or UIR, he would send the relevant documentation to the

New York State Bureau of Criminal Investigations and the Erie County District

Attorney's Office, and those entities would decide whether to pursue criminal charges.

*Id*.  After Casaceli reviewed the UOF and UIR here, he determined that Perez's conduct

was potentially prosecutable because the reports alleged that Perez hit and injured a

correction officer.  *Id.* at 2.  Accordingly, on February 14, 2012, Casaceli sent a

memorandum to the New York State Bureau of Criminal Investigations and the Erie

County District Attorney's Office informing them about the incident and providing them

with supporting documentation.  *Id.*; Docket Item 179-14 at 1.  None of the security staff

involved in the use of force had any involvement in alerting the police or district attorney

to what had occurred.  Docket Item 179-13 at 2.

On February 27, 2012, after receiving Casaceli's memorandum, the state police

opened an incident report, and the investigation was assigned to a police investigator,

Daniel E. Strozyk.  Docket Item 179-10 at 2-3.  On April 26, 2012, a felony complaint for

assault in the second degree, signed by Strozyk, was filed in Alden Town Court.  *Id.* at

1.  On May 28, 2013, the charge was reduced to harassment in the second degree, and

the charging document was signed by an assistant district attorney, Sydney Probst.

Docket Item 179-9 at 1.

Perez was prosecuted in Alden Town Court, but the charges ultimately were dismissed.  Docket Item 179-5 at 7-8.  Smith testified at the bench trial, and he may or may not have met briefly with the prosecutor when he arrived to testify.  *Id.*  The other defendants did not even know that Perez was criminally charged until quite recently, and no defendant recalled speaking with law enforcement about the incident.  *See* Docket Item 179-2 at 6; Docket Item 179-3 at 5-6; Docket Item 179-4 at 5-6; Docket Item 179-5 at 8; Docket Item 179-6 at 5-6.

## LEGAL PRINCIPLES

### I.    SUMMARY JUDGMENT

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

The movant—that is, the party seeking summary judgment—has the initial burden of showing that there is no genuine dispute of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant may satisfy this burden by relying on evidence in the record, "including depositions, documents, . . . [and] affidavits," Fed. R. Civ. P. 56(c)(1)(A), or by "point[ing] to an absence of evidence to support an essential element of the nonmoving party's claim," *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (citing *Celotex*, 477 U.S. at 322-23); *see* Fed. R. Civ. P. 56(c)(1)(B).  Once the movant has satisfied his initial burden, "the nonmoving party must come forward with specific facts" showing that there is a genuine dispute of material fact.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587

(1986) (internal quotation marks omitted).  If the nonmovant fails to carry this burden, the court may grant summary judgment.  *See Celotex Corp.*, 477 U.S. at 323.

A material fact is one that "might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*  "[T]he court must view the evidence in the record in the light most favorable to the non-moving party" and must draw "all reasonable inferences in that party's favor."  *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001).  But "conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment."  *Kulak v. City of N.Y.*, 88 F.3d 63, 71 (2d Cir. 1996).

## II.    SECTION 1983

"To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. Cty. of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875-76 (2d Cir. 1994)).  "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere."  *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).

**DISCUSSION**

The defendants argue that they are entitled to summary judgment on Perez's malicious prosecution claim because (1) "[n]one of the [d]efendants[] initiated the criminal prosecution against [Perez]"; (2) "[Perez] cannot demonstrate a [] post-arraignment liberty restraint sufficient to implicate his Fourth Amendment rights"; and (3) "[Perez] cannot show that [the d]efendants had any personal involvement in his criminal prosecution." Docket Item 179-12 at 2. The Court agrees with the first two grounds and therefore grants the defendants' motion for summary judgment.[4]

To state a section 1983 claim for malicious prosecution, a plaintiff must show that the defendant's conduct was tortious under state law and resulted in a constitutionally cognizable deprivation of liberty. *See Kinzer v. Jackson*, 316 F.3d 139, 143 (2d Cir. 2003). This requires a plaintiff to show: (1) that the defendant initiated or continued a criminal proceeding against him; (2) that the proceeding was terminated in the plaintiff's favor; (3) that there was no probable cause for the proceeding; (4) that the proceeding was instituted with malice; and (5) that the plaintiff suffered a post-arraignment liberty restraint sufficient to implicate his Fourth Amendment rights. *Rohman v. N.Y.C. Transit Authority*, 215 F.3d 208, 215 (2d Cir. 2000) (citing *Murphy v. Lynn*, 118 F.3d 938, 944-46 (2d Cir. 1997) (additional citations omitted)).

---

[4] Because the undisputed evidence shows that the defendants did not initiate or continue the prosecution against Perez and that Perez has not demonstrated a post-arraignment liberty restraint sufficient to implicate his Fourth Amendment rights, this Court does not reach the defendants' third argument.

## I.     INITIATION OR CONTINUATION OF CRIMINAL PROCEEDINGS

"To initiate [or continue] a prosecution, a defendant must do more than report the crime or give testimony." *Manganiello v. City of N.Y.*, 612 F.3d 149, 163 (2d Cir. 2010). The defendant must "play[] an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act." *Rohman*, 215 F.3d at 217 (internal quotation marks omitted). "A jury may permissibly find that a defendant initiated a prosecution where he 'filed the charges' or 'prepared an alleged false confession and forwarded it to prosecutors.'" *Manganiello*, 612 F.3d at 163 (internal marks omitted) (citing *Ricciuti v. N.Y.C. Transit Authority*, 124 F.3d 123, 130 (2d Cir. 1997)).

The undisputed evidence in the record here establishes that no defendant did anything more than "report the [incident] or give testimony," and that is insufficient to maintain a malicious prosecution claim. *See Manganiello*, 612 F.3d at 163. Smith, Pokigo, and Gregoire provided statements to their supervisors as part of the UOF and UIR, but they did not provide that information to the police. *See* Docket Item 179-7 at 3-5, 7. Indeed, it was Casaceli who decided that Perez's conduct was potentially prosecutable and alerted the New York State Bureau of Criminal Investigations and the Erie County District Attorney's Office. Docket Item 179-13 at 2. What is more, no defendant brought charges against Perez; Strozyk and Probst did that. *See* Docket Item 179-9 at 1; Docket Item 179-10 at 1, 12. And while Smith testified at Perez's trial, there is no evidence that he "advi[sed]," "encourage[d]," or "importun[ed]" prosecutors to pursue the charges against Perez. *See* Docket Item 179-5 at 6-8; *see also Rohman*, 215 F.3d at 217.

In sum, there simply is no evidence that any defendant played an active role in Perez's prosecution, and Perez offers no facts suggesting otherwise.  *See Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (explaining that once the moving party demonstrates a lack of evidence to support an essential element of the non-moving party's claim, "the nonmoving party must come forward with specific facts" showing that there is a genuine dispute of material fact).  Therefore, even accepting as true Perez's version of the events on January 26, Perez nonetheless has failed to raise an issue of material fact that any of the defendants initiated or continued the prosecution against him.  The defendants therefore are entitled to summary judgement on the malicious prosecution claim.

## II.     POST-ARRAIGNMENT LIBERTY CONSTRAINT

"[A] plaintiff does not have a claim for . . . malicious prosecution under section 1983 if, at the time of his arrest and prosecution, he already is in custody on other charges, because there is no deprivation of liberty interest."  *Kaid v. Akins*, 2017 WL 4411955, at *3 (W.D.N.Y. Oct. 4, 2017) (citing *Leniart v. Bundy*, 2011 WL 4452186, at *7 (D. Conn. Sept. 26, 2011)); *see also Walker v. Sankhi*, 494 F. App'x 140, 142-43 (2d Cir.2012) ("[The plaintiff's] malicious prosecution claim[] must fail because . . . [the plaintiff] could not have suffered a deprivation of liberty as a result of [one] burglary charge because, throughout the pendency of that charge, he was already in custody, and remained in custody, for a completely separate burglary charge, of which he was ultimately convicted."); *Dillhunt v. Theriault*, 2009 WL 4985477, at *16 (N.D.N.Y. Dec.15, 2009) (prisoner had no claim for malicious prosecution for prison disciplinary proceedings because these charges had no impact on his underlying incarceration);

*Parker v. City of N.Y.*, 2008 WL 110904, at *9 (S.D.N.Y. Jan 7, 2008) ("It is undisputed that, on the date he was arrested for the assault[,] . . . [the plaintiff] was already in state custody and in the middle of trial on unrelated criminal drug charges" and therefore could not bring false arrest and malicious prosecution claims based on the assault charge).

When Perez was arrested and prosecuted because of the January 26 incident, he was 12 years into a 25-year sentence. *See* Docket Item 179-11 at 1-2. Because Perez already was incarcerated, being arrested and having to appear in court did not deprive him of a constitutionally-protected liberty interest. *See Wright v. Kelly*, 1998 WL 912026, at *3 (W.D.N.Y. Oct. 16, 1998) (holding that requiring an incarcerated plaintiff "to appear at court proceedings [was not] a deprivation of liberty of a constitutional dimension"). Perez also has not offered any evidence that his length of incarceration was increased because of the charge. He therefore has failed to raise an issue of material fact that he suffered a post-arraignment seizure sufficient to implicate his Fourth Amendment rights, *see Kaid*, 2017 WL 4411955, at *3, and the defendants are entitled to summary judgment for that reason as well.

## CONCLUSION

For the reasons stated above, the motion for partial summary judgment, Docket Item 179, is GRANTED; and Perez's malicious prosecution claim is dismissed with prejudice.

SO ORDERED.

Dated:   April 22, 2021
         Buffalo, New York


                                        _/s/ Lawrence J. Vilardo_
                                        LAWRENCE J. VILARDO
                                        UNITED STATES DISTRICT JUDGE