UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JULIO PEREZ,

       Plaintiff,

v.

JONATHAN KRUGER, *et al.*,

       Defendants.

12-CV-740-LJV
DECISION & ORDER

---

On August 6, 2012, the plaintiff, Julio Perez, commenced this action under 42 U.S.C. § 1983, alleging claims of excessive force, deliberate indifference to medical needs, and malicious prosecution. Docket Item 1. This Court granted the defendants' motions for summary judgment on Perez's claims for deliberate indifference to his medical needs and malicious prosecution. Docket Items 76, 208. But Perez's claim that defendants Jonathan Kruger, William Gregoire, Denise Bell, Thomas Smith, and David Pokigo used excessive force during an incident on January 26, 2012, proceeded to a jury trial. Docket Items 236-39, 241.

On September 17, 2021, at the close of the defendants' case, Perez moved for judgment as a matter of law under Federal Rule of Civil Procedure 50(a), and the Court denied that motion. Docket Item 241. The Court proceeded to charge the jury, and the jury began deliberations. *Id.* Later that same day, the jury returned a verdict in favor of the defendants. Docket Item 242. Specifically, the jury found that "Wende Correctional Facility ha[d] grievance procedures generally available that covered an inmate's complaints about staff conduct, including excessive force" and that "a person of ordinary firmness, similarly situated to the plaintiff, Julio Perez, [would not] have been deterred

from filing a grievance related to the defendants' conduct." *Id.* at 2 (capitalization omitted). The Court subsequently entered judgment in favor of the defendants. Docket Item 244.

On October 26, 2021, Perez renewed his motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(b); in the alternative, he moved for a new trial under Federal Rule of Civil Procedure 59. Docket Item 245. Two weeks later, the defendants responded, Docket Item 247, and a week after that, Perez replied, Docket Item 252.

In the meantime, the defendants filed a bill of costs on October 28, 2021. Docket Item 246. Three weeks later, Perez responded in opposition. Docket Item 253.

For the following reasons, Perez's motion for judgment as a matter of law and, in the alternative, a new trial, is denied, and the defendants' bill of costs is granted in part and denied in part.

## **FACTUAL BACKGROUND**[1]

Perez's excessive force claims arise out of an incident that occurred on January 26, 2012, when he was confined at the Wende Correctional Facility ("Wende"). *See* Docket Item 1 at 6. Throughout this case and at trial, the parties offered differing accounts about what happened that day.

---

[1] The Court assumes familiarity with the factual background of this case and will refer to the facts and trial testimony only to the extent necessary to explain this decision. For a full recitation of the factual background of Perez's claims, the Court refers the reader to this Court's prior decisions, Docket Items 76, 208.

According to the defendants, "at approximately 6:35 p.m. [on January 26,] Smith and Pokigo were escorting [Perez] off of 5 Company, A Block[,] to be interviewed by [] Gregoire about an earlier incident involving [] Bell, when, without provocation, [Perez] suddenly turned and struck Smith on the left side of his face with a closed fist." Docket Item 179-1 at 2. In response, "Smith and Pokigo each grabbed one of [Perez's] arms and took him to the ground, and Gregoire responded and applied mechanical restraints." Id.

Perez, on the other hand, alleges that Bell called Perez out of his cell and that the defendants and other correctional officers then attacked Perez in the lobby, "knock[ing Perez] to the floor while kicking [] and punching [him]." Docket Item 1 at 6. According to Perez, the defendants assaulted him in retaliation for a grievance he previously filed against another correction officer and threatened to further harm him if he filed a grievance about this incident. Id.

## LEGAL PRINCIPLES

**I.   RENEWED MOTION FOR JUDGMENT AS MATTER OF LAW**

Federal Rule of Civil Procedure 50(b) provides that a party "may file a renewed motion for judgment as a matter of law" after entry of judgment. The burden to succeed on a Rule 50(b) motion is high. A court may grant a Rule 50(b) motion only "if there exists such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or the evidence in favor of the movant is so overwhelming that reasonable and fair[-]minded persons could not arrive at a verdict against it." *Brady v. Wal-Mart Stores, Inc.*, 531

F.3d 127, 133 (2d Cir. 2008) (alterations, citations, and internal quotation marks omitted).

In evaluating a Rule 50(b) motion, "courts are required to consider the evidence in the light most favorable to the party against whom the motion was made and to give that party the benefit of all reasonable inferences that the jury might have drawn in its favor from the evidence." *ING Glob. v. United Parcel Serv. Oasis Supply Corp.*, 757 F.3d 92, 97 (2d Cir. 2014) (alterations, citations, and internal quotation marks omitted). A court "may not weigh the credibility of witnesses or otherwise consider the weight of the evidence." *Caruolo v. John Crane, Inc.*, 226 F.3d 46, 51 (2d Cir. 2000). When "[d]efendants' liability turns on [a] jury's credibility determinations," a court "cannot disturb" those determinations "unless the verdict was egregious." *Menghi v. Hart*, 745 F. Supp. 2d 89, 98 (E.D.N.Y. 2010), *aff'd*, 478 F. App'x 716 (2d Cir. 2012) (citations and internal quotation marks omitted). In other words, a court cannot "substitute its judgment for that of the jury." *LeBlanc-Sternberg v. Fletcher*, 67 F.3d 412, 429 (2d Cir. 1995) (citations omitted).

## II.   MOTION FOR A NEW TRIAL

Federal Rule of Civil Procedure 59 permits a court to "grant a new trial on all or some of the issues . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." But a court "should not grant a motion for a new trial unless it is convinced that the jury . . . reached a seriously erroneous result or that the verdict is a miscarriage of justice." *Ali v. Kipp*, 891 F.3d 59, 64 (2d Cir. 2018) (citation and internal quotation marks omitted).

In deciding a motion for a new trial under Rule 59, in contrast to a motion for judgment as a matter of law under Rule 50(b), a court "may weigh the evidence and the credibility of witnesses and need not view the evidence in the light most favorable to the verdict winner."  *Raedle v. Credit Agricole Indosuez*, 670 F.3d 411, 418 (2d Cir. 2012).  But a court still should not grant such a motion lightly.  Indeed, courts "must exercise their ability to weigh credibility with caution and great restraint, as a judge should rarely disturb a jury's evaluation of a witness's credibility."  *Id.* (citation and internal quotation marks omitted).  And "[w]here the resolution of the issues depended on [the jury's] assessment of the credibility of the witnesses, it is proper for the court to refrain from setting aside the verdict and granting a new trial."  *Id.* (citations omitted).

## DISCUSSION

### I.   JUDGMENT AS A MATTER OF LAW

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  "The PLRA exhaustion requirement 'applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.'"  *Espinal v. Goord*, 558 F.3d 119, 124 (2d Cir. 2009) (quoting *Porter v. Nussle,* 534 U.S. 516, 532 (2002)).

A prisoner is exempt from the exhaustion requirement, however, "when administrative remedies are 'unavailable.'"  *Lucente v. County of Suffolk*, 980 F.3d 284, 311 (2d Cir. 2020) (quoting *Ross v. Blake,* 578 U.S. 632, 642 (2016)).  For example, an

5

administrative remedy might be unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through . . . intimidation." *Id.* (citations omitted).  "The test for deciding whether the ordinary grievance procedures were available [is] an objective one: that is, would a similarly situated individual of ordinary firmness have deemed them available." *Id.* at 311-12 (citations omitted).

There is no dispute that Perez did not file a grievance in connection with the January 26, 2012 incident; indeed, during his testimony, he admitted that he did not. Docket Item 257 at 47.  Accordingly, before the jury could reach the issue of whether the defendants used excessive force against Perez on January 26, 2012, it first had to address a threshold question: "Would a person of ordinary firmness, similarly situated to the plaintiff, Julio Perez, have been deterred from filing a grievance related to the defendants' conduct?"  Docket Item 242 at 2 (verdict sheet) (capitalization omitted). The jury answered that question in the negative.  *Id.*

Perez argues that based on all the evidence presented at trial, "no reasonable juror could conclude that a 'person of ordinary firmness, similarly situated to the plaintiff' would not have been deterred from filing a grievance related to [the d]efendants' conduct."  Docket Item 245-3 at 7-14.  More specifically, he claims that the jury had to accept (1) the testimony of Perez's expert witness, Dr. Beverly Prince, which established that Perez "suffered acute facial injuries" as a result of the January 26 incident, *id.* at 7, and (2) Perez's testimony that the defendants told him that the January 26 incident "was for filing grievances" and "that they threatened him with further harm if he filed a grievance about the" incident, *id.* at 12.  And if the jury credited either Dr. Prince's or Perez's testimony, Perez argues, then it had to find that a "person of

6

ordinary firmness, similarly situated to the plaintiff" would "have been deterred from filing a grievance." *Id.* at 7-14.

Perez's arguments about Dr. Prince's testimony are largely irrelevant. Even if the jury had to accept Dr. Prince's testimony that "Perez suffered an acute zygoma fracture and deviated nasal septum" as a result of the January 26 incident, *see id.* at 11, it still would not have been required to find that it was reasonable for Perez to fear retaliation if he filed a grievance about that incident.

In fact, Dr. Prince's testimony, without more, would have been an insufficient basis to conclude that Perez reasonably feared retaliation if he filed a grievance; that would mean inferring that Perez feared retaliation if he filed a grievance solely because he suffered serious injuries. What is more, "a generalized fear of retaliation [] is insufficient as a matter of law to support a finding that the grievance process was unavailable." *Lucente*, 980 F.3d at 312. Instead, to render a grievance process unavailable, a prisoner's fear needs to "relate[] to threats or intimidation in connection with the grievance process itself." *See id.* So Perez's injuries resulting from the incident, while serious, did not and could not by themselves render the grievance process unavailable to him. *See id.* ("[Defendant's] alleged sexual harassment and sexual assault of [plaintiff], as serious as those allegations are, would not necessarily alone provide a legal basis to conclude that the entire grievance process was unavailable to [plaintiff].").

Perez argues that he offered more than just Dr. Prince's testimony to show that the grievance process was unavailable to him: Perez himself testified that the defendants assaulted him for filing grievances and threatened to harm him again if he

7

filed another one.  *See* Docket Item 245-3 at 12-14; Docket Item 252 at 5.  And Perez argues that the jury had to accept his testimony.  Docket Item 245-3 at 12-14.

Perez is correct that he testified that the defendants threatened to harm him if he continued to file grievances, *see* Docket Item 257 at 25-26, 47-48, and that they assaulted him because he filed grievances against another correctional officer at Wende, *see id.* at 16, 18, 21, 80.  But Perez's testimony was not the only evidence on the matter.  In fact, the defendants testified—quite explicitly—that they did not threaten to retaliate against Perez if he filed a grievance.

For example, Pokigo testified that neither he nor anyone else threatened Perez during the incident:

| [Defendants' Counsel]: | At any time during the entire incident, did you threaten Mr. Perez not to file a grievance? |
|---|---|
| [Pokigo]: | No. |
| [Defendants' Counsel]: | At any time during the entire incident, did you hear anybody threaten Mr. Perez not to file a grievance? |
| [Pokigo]: | No. |

Docket Item 260 at 9.

Smith likewise testified that he did not threaten Perez or hear anyone else threaten him:

| [Defendants' Counsel]: | At any time during the entire incident, did you threaten Mr. Perez to not file a grievance? |
|---|---|
| [Smith]: | No. |
| [Defendants' Counsel]: | At any time during the entire incident, did you hear anybody else threaten Mr. Perez to not file a grievance? |
| [Smith]: | No. |

Docket Item 258 at 12-13.

Similarly, the defendants offered testimony contradicting Perez's testimony that the defendants assaulted him for filing a grievance against another officer. For instance, Bell testified that she did not use force against Perez in retaliation for a previous grievance:

| | |
|---|---|
| [Defendants' Counsel]: | [W]hat do you say in response to [Perez's] testimony that you used force on him in retaliation for grievances he had filed against other officers? |
| [Bell]: | He's lying. |
| | * * * |
| [Defendants' Counsel]: | Prior to this incident, had any other [New York State Department of Corrections and Community Supervision ("DOCCS")] employee ever asked you to harass or harm Mr. Perez? |
| [Bell]: | No. |

Docket Item 259 at 23-24.

And Smith also denied that the incident was in retaliation for Perez's previous grievances:

| | |
|---|---|
| [Defendants' Counsel]: | And you also heard [Perez's] testimony about the fact that he believes you used force on him in retaliation for filing grievances against other corrections officers previously. What do you say about that? |
| [Smith]: | That's ridiculous, no. |
| [Defendants' Counsel]: | Okay. So prior to the incident, no DOCCS employee had ever asked you to harass or harm Mr. Perez? |
| [Smith]: | No. |

Docket Item 258 at 14-15.

9

Despite the contradictory testimony, Perez argues that he is entitled to judgment as a matter of law because his testimony "was the only reasonable version of events presented to the jury" and no reasonable juror could have accepted the defendants' testimony. Docket Item 245-3 at 12-14. More specifically, he argues that no reasonable juror could have accepted the defendants' testimony because Smith's and Pokigo's testimony on "the manner and method" by "which they took Perez to the ground during the use of force incident" was "unbelievable," "did not add up," and "did not make sense." Docket Item 252 at 6-7; *see also* Docket Item 245-3 at 12-14.

Perez's argument falls short. Even if Smith's and Pokigo's testimony about the way that they took Perez to the ground "did not add up" and is so inconsistent that a jury could not have believed Smith and Pokigo on that point, the jury still would have been free to believe Smith's and Pokigo's testimony that they did not threaten Perez or attack him in retaliation for a prior grievance. *See Zellner v. Summerlin*, 494 F.3d 344, 371 (2d Cir. 2007) ("[T]he jury is free to believe part and disbelieve part of any witness's testimony."); *Haywood v. Koehler*, 78 F.3d 101, 105 (2d Cir. 1996) ("As in most trials, and especially in one where . . . events occur[ed] rapidly and in a highly charged atmosphere, the jurors were not required to accept the entirety of either side's account, but were free to accept bits of testimony from several witnesses and to make reasonable inferences from whatever testimony they credited.").

And in addition to all that, the defendants presented compelling evidence consistent with their story that Perez assaulted Smith and that they restrained him for that reason. Smith testified that Perez "punched [him] in the face" and that as a result of the punch he suffered a broken bone in his eye socket and a broken nose. Docket Item

10

258 at 5, 10.  The defendants introduced photos of Smith, as well as an employee accident and injury report, supporting that story.  *See id.* at 10-12 (admitting employee accident and injury report into evidence), 23-24 (admitting photos of Smith into evidence); *see also* Docket Items 237, 238.  In the photos, taken shortly after the incident, Smith has a bruise on his left check consistent with having been punched there.  The employee accident and injury report, dated January 26, 2012, also notes a bruise on Smith's left cheek and recommends that Smith visit the emergency room that night.  So given the photos of Smith as well as the employee accident and injury report, the jury had good reason to believe the defendants' version of events—that the defendants restrained Perez only after he punched Smith—and to disbelieve Perez's story that the defendants assaulted him without provocation.

In short, the jury heard competing stories about whether the defendants threatened to retaliate against Perez if he filed a grievance and whether the defendants assaulted Perez on January 26, 2012 because of his previous grievances against another officer.  The jury was free to find the defendants more credible on those points, and it was well within its province to conclude that Perez—a prisoner who did not face retaliatory threats and who was not attacked by the defendants because of a prior grievance—was not reasonably deterred from filing a grievance about the January 26 incident.

By asking the Court to grant him judgment as a matter of law, Perez asks this Court to decide whose testimony about the January 26 incident and alleged retaliatory threats was more credible—precisely what this Court may not do in deciding a Rule 50(b) motion.  It was the jury's—not the Court's—responsibility to weigh the conflicting

evidence, and the jury did so. This Court cannot now "substitute its judgment for that of the jury." *LeBlanc-Sternberg*, 67 F.3d at 429 (citations omitted).

Perez's renewed motion for judgment as a matter of law therefore is denied.

## II.    NEW TRIAL

In the alternative, Perez asks this Court to grant him a new trial because the jury "reached a seriously erroneous result in finding that a person of ordinary firmness in Perez's circumstances would not have been deterred from filing a grievance." Docket Item 245-3 at 14-15.

As just explained, the jury's finding about whether Perez was reasonably deterred from filing a grievance hinged on the jury's assessment of witness credibility. Although on a Rule 59 motion a court "may weigh the evidence and the credibility of witnesses and need not view the evidence in the light most favorable to the verdict winner," it still "should rarely disturb a jury's evaluation of [] witness[] credibility." *Raedle*, 670 F.3d at 418. Indeed, "[a] grant of a new trial on the ground that the verdict was against the weight of the evidence is appropriate" only if "'the jury has reached a seriously erroneous result or . . . the verdict is a miscarriage of justice.'" *Farrior v. Waterford Bd. of Educ.*, 277 F.3d 633, 634 (2d Cir. 2002) (per curiam) (citation omitted). That certainly did not happen here.

Here, the jury's finding that "a person of ordinary firmness in Perez's circumstances would not have been deterred from filing a grievance" was neither "seriously erroneous" nor "a miscarriage of justice." As explained above, the jury reached a reasonable verdict based on Perez's and the defendants' conflicting

testimony, as well as the photos and other evidence supporting the defendants' version of the events at issue. Perez's motion for a new trial therefore is denied as well.

### III.    DEFENDANTS' BILL OF COSTS

The defendants submitted a bill for $2,135.62 to recover their costs for copying and for four transcripts that they needed for use in this case. Docket Item 246. Perez objects to the per-page rates used by the defendants to calculate their copy costs as well as the cost of three of the four transcripts. Docket Item 253.

The defendants' copying costs are based on a rate of $0.50 per page, totaling $934.50 for 1,869 pages. *See* Docket Item 246-1 at ¶¶ 6-8. Perez argues that the maximum rate is $0.10 per page and that the defendants' recoverable costs therefore should be reduced by $747.60. This Court agrees with Perez.

"Copying of any materials where the copies are necessarily obtained for use in the case also are recoverable[] and are taxed at the lesser of actual costs and this Court's published schedule of permitted rates." *Coolidge v. United States*, 2021 WL 1206514, at *16 (W.D.N.Y. Mar. 31, 2021) (citing 28 U.S.C. § 1920(4); W.D.N.Y. Guidelines for Bills of Costs ("Guidelines") Part II.H.1, https://www.nywd.uscourts.gov/sites/nywd/files/Bill_of_Costs_01_01_15.pdf). "10 cents per page . . . 'appears to be the going rate for in-house copying.'" *Schmeichel v. Installed Bldg. Prod., LLC*, 2019 WL 1585270, at *1 (W.D.N.Y. Apr. 12, 2019) (citations omitted) (collecting cases). Moreover, this District's published schedule of fees is $0.10 per page. District Court Schedule of Fees (revised May 30, 2021), https://www.nywd.uscourts.gov/sites/nywd/files/district_court_fee_schedule_122020.pdf.

13

The defendants have not provided evidence that the going rate for copies is higher than $0.10 per page or that counsel's costs have increased and justify a higher rate.  The Court therefore reduces the defendants' copy cost from $934.50 to $186.90.

Perez also objects to the cost of three of the four transcripts included in the bill of costs.  Docket Item 253 at 4-6.  Specifically, Perez objects to (1) the transcript rate of $4.03 per page used to calculate the cost for the 63-page transcript of Perez's deposition; (2) the transcript rate of $4.04 per page used to calculate the cost for the 92-page transcript of Dr. Prince's July 15, 2020 deposition; and (3) the transcript rate of approximately $3.95 per page used to calculate the cost for the 95-page transcript of Dr. Prince's September 29, 2017 deposition.  *Id.* at 5-6.  He argues that a rate of $3.65 per page should be used instead.

This District's Guidelines provide that "[c]ourt reporter fees should be reasonable, and as a guide, the Court takes into account the existing maximum rates for transcript fees for official court reporters as set by the Judicial Conference of the United States and adopted by this Court" and that "the transcript fees for official court reporters are presumed reasonable."  Guidelines Part II.D.1, Note 3.  The District's maximum rate for an ordinary transcript—that is, one to be delivered within 30 calendar days after receipt of order—is $3.65 per page.  Maximum Transcript Rate—All Parties Per Page, https://www.nywd.uscourts.gov/sites/nywd/files/Maximum%20Transcript%20Rates.pdf; *see also Coolidge*, 2021 WL 1206514, at *18 (referring to $3.65 per page as the "regular transcription rate").

Because the defendants have provided no reason for varying from the $3.65 per-page rate, this Court agrees that the rate of $3.65 per page should be used to calculate

14

the cost for the transcripts of Perez's deposition and Dr. Prince's two depositions. The Court therefore reduces the defendants' total transcript costs from $1,201.12 to $1,113.25.

## CONCLUSION

For the reasons stated above, Perez's motion for judgment as a matter of law or, in the alternative, a new trial is DENIED. The defendants' bill of costs is GRANTED in part and DENIED in part. The defendants are entitled to recover $1,300.15 in costs. The Clerk of the Court shall tax costs against the plaintiff accordingly.

SO ORDERED.

Dated:  September 13, 2022
        Buffalo, New York

                                          */s/ Lawrence J. Vilardo*
                                      LAWRENCE J. VILARDO
                                      UNITED STATES DISTRICT JUDGE